# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF TENNESSEE

### CHATTANOOGA DIVISION

| | |
|---|---|
| JASON A. HESS, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>VOLKSWAGEN GROUP OF AMERICA, INC.,<br><br>        Defendant. | Case No.<br><br>CLASS ACTION<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

# TABLE OF CONTENTS

Page

INTRODUCTION ....................................................................................................................1

JURISDICTION AND VENUE ................................................................................................2

PARTIES ..................................................................................................................................3

      A.    Plaintiff ...................................................................................................3

      B.    Defendant ................................................................................................3

FACTUAL BACKGROUND.....................................................................................................4

      A.    Volkswagen Markets the Class Vehicles as High-Performance, Eco-Friendly, and Fuel-Efficient Diesel Vehicles. ......................................4

      B.    Volkswagen Lied to Its Consumers and Deliberately Concealed the Excessive and Unlawful Levels of Pollution Emitted by Many of Its So-Called "Clean Diesel" Vehicles. ........................................................7

      C.    Once Caught, Volkswagen Admitted Its Fraud. ...........................................9

      D.    Volkswagen Has Reaped Considerable Profit From Its Fraud ....................9

      E.    Plaintiff and Class Members Have Suffered Significant Harm as a Result of Volkswagen's Unlawful Actions................................................10

TOLLING OF THE STATUTE OF LIMITATIONS...................................................................10

    Fraudulent Concealment ......................................................................................10

    Estoppel...............................................................................................................11

    Discovery Rule.....................................................................................................11

CLASS ACTION ALLEGATIONS .........................................................................................12

    Numerosity and Ascertainability ..........................................................................13

    Typicality .............................................................................................................13

    Adequate Representation ......................................................................................13

    Predominance of Common Issues..........................................................................14

    Superiority............................................................................................................15

CLAIMS FOR RELIEF ...........................................................................................................16

    FIRST CLAIM FOR RELIEF Common Law Fraud (Brought on Behalf of the Nationwide Class)................................................................................................16

    SECOND CLAIM FOR RELIEF Unjust Enrichment (Brought on Behalf of the Nationwide Class)................................................................................................19

1274471.1
Case 1:15-cv-00254   Document 1   Filed 09/25/15   Page 2 of 31   PageID #: 2

# TABLE OF CONTENTS
## (continued)

Page

THIRD CLAIM FOR RELIEF Breach of Express Warranty (Brought on Behalf of the Nationwide Class)........................................................................................20

FOURTH CLAIM FOR RELIEF Violation of Magnuson-Moss Act, 15 U.S.C. §§ 2301, *et seq.* – Implied Warranty (Brought on Behalf of the Nationwide Class)....................................................................................................................22

FIFTH CLAIM FOR RELIEF Breach of Implied Warranty (Brought on Behalf of Tennessee Subclass).............................................................................................24

PRAYER FOR RELIEF ........................................................................................................25

DEMAND FOR JURY TRIAL ..............................................................................................27

# INTRODUCTION

1.      For over six years, Volkswagen Group of America, Inc. ("Volkswagen") has intentionally and systematically cheated its customers, lied to the government, and misled the public about the efficacy of its four cylinder diesel-engine vehicles sold under the Volkswagen and Audi brands. Volkswagen has marketed its so-called "clean diesel" vehicles as high performing, fuel efficient, and environmentally-friendly. In truth, Volkswagen's clean diesel vehicles are anything but clean.

2.      Instead, the Class Vehicles, defined below, emit noxious pollutants at *up to 40 times* the legal limit allowed under federal and state law. In order to conceal this inconvenient truth from regulators and the public, Volkswagen installed a sophisticated software algorithm, or "defeat device," in the Class Vehicles that instructs them to cheat on emissions tests; that is, to engage full emissions controls only when undergoing official emissions testing. *At all other times, the emissions controls are de-activated*, and the vehicles emit extremely high, and illegal, levels of pollutants. "Truth in Engineering" is Audi's official slogan. Ironically, these Audis (and Volkswagens) were engineered to deceive.

3.      As used in this Complaint, the "Class Vehicles" refer to Volkswagen and Audi vehicles sold in the United States with four cylinder, Type EA 189 and EA 288 diesel engines, which share a common, uniform, deceitful, and harmful design, in that they (A) emit high and illegal levels of pollutants in normal operation; (B) are equipped with a defeat device enabling them to bypass emissions regulations; and (C) cannot deliver the advertised combination of low emissions, fuel economy, and high performance for which they were marketed and advertised. The Class Vehicles include at least the following makes and model years:

- 2009 – 2015 Volkswagen Jetta

- 2009 – 2014 Volkswagen Jetta SportWagen

- 2012 – 2015 Volkswagen Beetle

- 2012 – 2015 Volkswagen Beetle Convertible

- 2010 – 2015 Volkswagen Golf

- 2015 Volkswagen Golf SportWagen

- 2012 – 2015 Volkswagen Passat

- 2010 – 2015 Audi A3

4.     Volkswagen has admitted that the defeat device was present in approximately 482,000 Class Vehicles sold in the United States, and more than 11 million vehicles worldwide.

5.     Plaintiff Jason A. Hess is among those who were deceived and cheated by Volkswagen and who purchased and/or leased a Class Vehicle based on Volkswagen's misrepresentations and omissions.  He brings this action individually and on behalf of a Class of all persons similarly situated in the United States who purchased or leased a Class Vehicle and a Subclass of Tennessee residents who purchased or leased a Class Vehicle (the "Class Members").

## JURISDICTION AND VENUE

6.     Jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because Plaintiff and many members of the proposed Plaintiff Class are citizens of states different from Volkswagen's home states, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.  The Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

7.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this

District. Volkswagen manufactures one of the Class Vehicles in this District, conducts substantial business in this District, has marketed, advertised, sold and leased the Class Vehicles in this District, and has caused harm to Class Members residing in this District.

## PARTIES

### A. Plaintiff

8.      Plaintiff Jason A. Hess is a resident and citizen of Nashville, Tennessee. Plaintiff Hess purchased a new 2015 Volkswagen Passat TDI SE, VIN 1VWBV7A34FC011325, at Hallmark Volkswagen of Cool Springs in Franklin, Tennessee. Plaintiff Hess's vehicle was manufactured and/or assembled in Volkswagen's Chattanooga, Tennessee, plant. Unbeknownst to Plaintiff Hess, at the time of acquisition, the vehicle contained a defeat device designed to bypass emissions standards and deceive consumers and regulators, and the vehicle could not deliver the advertised combination of low emissions, high performance, and fuel economy.

9.      Plaintiff Jason A. Hess previously owned a 2009 Volkswagen Jetta TDI (also a Class Vehicle).

### B. Defendant

10.      Defendant Volkswagen Group of America, Inc. ("Volkswagen") is a corporation doing business in all 50 states and is organized and incorporated under the laws of New Jersey. Its office is located at 2200 Ferdinand Porsche Drive, Herndon, Virginia 20171 and its principal manufacturing facility is located at 7351 Volkswagen Drive, Chattanooga, Tennessee. Volkswagen is a citizen of New Jersey and Virginia. *See* 28 U.S.C. § 1332(d)(10).

11.      At all relevant times, Volkswagen manufactured, distributed, sold, leased and warranted the Class Vehicles under the Volkswagen and Audi brand names throughout the nation. Volkswagen designed and manufactured the Class Vehicles, and created and distributed the manuals, advertisements, and other promotional materials relating to the Class Vehicles.

## **FACTUAL BACKGROUND**

12.     This case arises from Volkswagen's unprecedented, and until recently successful,

efforts to cheat consumers, deceive the public, and bypass federal and state regulations.

**A.     Volkswagen Markets the Class Vehicles as High-Performance, Eco-Friendly,
and Fuel-Efficient Diesel Vehicles.**

13.     Diesel vehicles are generally more fuel efficient and powerful than gasoline

engines.  Diesel engines, however, emit higher levels of certain pollutants as a by-product of

combustion.

14.     Volkswagen attempted to address this problem with its so-called "clean diesel"

vehicles.  In an effort to make the Class Vehicles more marketable and induce consumers to pay

premium prices, Volkswagen claimed its clean diesel TDI (turbocharged direct injection) engines

combined fuel efficiency and high performance with low emissions.  The combination of these

three characteristics was the primary selling point for the Class Vehicles and was the centerpiece

of Volkswagen's advertising efforts.

15.     Some advertisements, for example, specifically emphasized the low emissions

and eco-friendliness of the vehicles:

1274471.1





 

16.     Others touted the combination of fuel efficiency and power:



17.     Yet others addressed the full package, implying that in contrast to the "stinky, smoky, and sluggish" diesel vehicles of old, Volkswagen's new diesel vehicles were clean, efficient, and powerful all at once:



**This ain't your daddy's diesel.**

Stinky, smoky, and sluggish. Those old diesel realities no longer apply. Enter TDI Clean Diesel. Ultra-low-sulfur fuel, direct injection technology, and extreme efficiency. We've ushered in a new era of diesel.

- **Engineered to burn low-sulfur diesel fuel**
- **"Common Rail" direct injection system**

View key fuel efficiency info ?

18.     Volkswagen's efforts were a resounding success, as Volkswagens and Audis became the highest-selling diesel passenger cars in the United States.

19.     Unfortunately, the "clean diesel" vehicles were a sham. The truth of the manner in which these so-called "clean diesels" were designed and engineered was far stranger than the fiction under which Volkswagen sold them.

**B.     Volkswagen Lied to Its Consumers and Deliberately Concealed the Excessive and Unlawful Levels of Pollution Emitted by Many of Its So-Called "Clean Diesel" Vehicles.**

20.     For years, Volkswagen failed to disclose to the public and to consumers the presence of the defeat devices in the Class Vehicles and the true nature of its Class Vehicles' performance and emissions.

21.     On September 18, 2015, the Environmental Protection Agency ("EPA") slapped Volkswagen with a Notice of Violation ("NOV") of the Clean Air Act. The NOV explains that Volkswagen secretly installed a defeat device in certain of its diesel vehicles. As described above, the defeat device is a complex software algorithm which enables the vehicles to bypass

emissions standards by engaging the emission control function only during official emissions testing and rendering it inoperative at all other times.

22.     In short, vehicles equipped with the defeat device software meet emissions standards only during testing; in normal operation they emit pollutants, including nitrogen oxides ("NOx"), at up to 40 times the legal limit.

23.     As noted in the EPA's official press release, NOx is dangerous:

> NOx pollution contributes to nitrogen dioxide, ground-level ozone, and fine particulate matter. Exposure to these pollutants has been linked with a range of serious health effects, including increased asthma attacks and other respiratory illnesses that can be serious enough to send people to the hospital. Exposure to ozone and particulate matter have also been associated with premature death due to respiratory-related or cardiovascular-related effects. Children, the elderly, and people with pre-existing respiratory disease are particularly at risk for health effects of these pollutants.[1]

24.     Unsurprisingly, then, defeat devices are illegal. The Clean Air Act expressly prohibits engine parts or components which "bypass, defeat, or render inoperative" the emission control system. CAA § 203 (a)(3)(B). Volkswagen's software did just that, and in so doing, violated the Clean Air Act.

25.     Volkswagen also violated the Clean Air Act by falsely certifying to the EPA that the Class Vehicles would meet applicable federal emission standards to obtain the EPA-issued Certificate of Conformity, which is required to sell vehicles in the United States.

---

[1] *See* 2015 Press Releases, EPA, *EPA, California Notify Volkswagen of Clean Air Act Violations*, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, (September 18, 2015), http://yosemite.epa.gov/opa/admpress.nsf/21b8983ffa5d0e4685257dd4006b85e2/dfc8e33b5ab162b985257ec40057813b!OpenDocument. Plaintiff requests that the Court take judicial notice of these public admissions under Fed. R. Evid. 201.

### C.     Once Caught, Volkswagen Admitted Its Fraud.

26.     Volkswagen AG CEO Martin Winterkorn has already acknowledged the fraud and issued an apology for having "broken the trust of our customers and the public."[2]

27.     Similarly, Volkswagen Group of America, Inc.'s CEO, Michael Horn, conceded that Volkswagen "was dishonest with the EPA, and the California Air Resources Board, and with all of you." He went on to admit that Volkswagen "totally screwed up" and that it "must fix the cars."

### D.     Volkswagen Has Reaped Considerable Profit From Its Fraud.

28.     Volkswagen charged premiums of several thousands of dollars for the Clean Diesel models of the Class Vehicles. These premiums are represented in the chart below and reflect the value consumers placed on the advertised features of the Clean Diesel vehicles and paid to obtain, and which Volkswagen promised to all, but delivered to no one:

| Clean Diesel Price Premium | | | |
|---|---|---|---|
| Model | Base | Mid-Level | Top-Level | Average |
| VW Jetta | $2,860.00 | $1,570.00 | $1,030.00 | $1,820.00 |
| VW SportWagen | $5,570.00 | $1,680.00 | $0.00 | $2,416.67 |
| VW Golf | $2,400.00 | $1,000.00 | $1,000.00 | $1,466.67 |
| VW Golf SportWagen | $2,950.00 | $1,000.00 | $1,000.00 | $1,650.00 |
| VW Beetle | $4,635.00 | $4,920.00 | $0.00 | $3,185.00 |
| VW Beetle Convertible | $4,080.00 | $530.00 | $700.00 | $1,770.00 |
| VW Passat | $5,755.00 | $2,845.00 | $2,135.00 | $3,578.33 |
| Audi A3 | $2,300.00 | $2,300.00 | $2,300.00 | $2,300.00 |
| Average | $3,818.75 | $1,980.63 | $1,020.63 | $2,273.33 |

29.     Had Volkswagen revealed the truth about the Class Vehicles, eco-conscious consumers would likely have taken their business to other automobile manufacturers.

---

[2] Winterkorn subsequently resigned on September 23, 2015.

30.     Volkswagen will not be able to adequately fix the vehicles.  The EPA has ordered Volkswagen to bring the Class Vehicles into compliance with the emissions standards of the Clean Air Act, but doing so will materially compromise the vehicles' performance and/or fuel efficiency.  Even if Volkswagen is able to make the Class Vehicles EPA-compliant through a retrofit, the vehicles will no longer perform as previously represented to the public and consumers, and Plaintiff and Class Members will be deprived of the benefits Volkswagen promised and for which they bargained when they purchased or leased the Class Vehicles.

31.     As a result, the Class Vehicles do not function as reasonable consumers expect, and have lost considerable value.  Moreover, Plaintiff and Class Members will incur additional expenses at the pump as a result of the decreased fuel efficiency.

32.     Volkswagen failed to disclose these material facts to the public and to consumers. Had Plaintiff and Class Members known of the defect at the time they decided to purchase or lease the Class Vehicles, they would have declined to purchase or lease the vehicles, or would have paid considerably less than they did.

33.     In sum, Volkswagen's deliberate deception has caused significant harm to Plaintiff, Class Members, and the public.

## TOLLING OF THE STATUTE OF LIMITATIONS

### Fraudulent Concealment

34.     Volkswagen concealed its fraud from the Class.  Upon information and belief, Volkswagen has known of the defeat devices installed in the Class Vehicles since at least 2009 when it began installing them, and has intentionally concealed from or failed to notify Plaintiff,

Class Members, and the public of the defeat devices and the true emissions and performance of the Class Vehicles.

35.     The defeat device is a complicated software algorithm designed only to detect emissions testing conditions to selectively initiate the full emissions controls and trick the emissions test.  The defeat device could only have been installed intentionally by Volkswagen, and the only purpose of the code is to deceive regulators, consumers, and the public.

36.     Despite knowing about the defeat device and unlawful emissions, Volkswagen did not acknowledge the problem until after the EPA issued its NOV on September 18, 2015.

37.     Any applicable statute of limitation has therefore been tolled by Volkswagen's knowledge and active concealment of the facts alleged herein.

## Estoppel

38.     Volkswagen was and is under a continuous duty to disclose to Plaintiff and Class Members the true character, quality, and nature of the vehicles.  Instead, it actively concealed the true character, quality, and nature of the vehicles and knowingly made misrepresentations about the quality, reliability, characteristics, and performance of the vehicles.  Plaintiff and Class Members reasonably relied upon Volkswagen's knowing and affirmative misrepresentations and/or active concealment of these facts.  Based on the foregoing, Volkswagen is estopped from relying on any statutes of limitation in defense of this action.

## Discovery Rule

39.     The causes of action alleged herein did not accrue until Plaintiff and Class Members discovered that the Class Vehicles had the defeat devices and were not delivering the low emissions that were advertised and warranted by Volkswagen.

40.     Plaintiff and Class Members had no realistic ability to discover the presence of

the defeat devices, or to otherwise learn of the fraud, until it was discovered by the EPA and

California Air Resources Board and revealed to the public on September 18, 2015.

### CLASS ACTION ALLEGATIONS

41.     Plaintiff brings this lawsuit as a class action on his own behalf and on behalf of all

other persons similarly situated as members of the proposed Class, pursuant to Federal Rules of

Civil Procedure 23(a) and (b)(3) and/or (b)(2) and/or c(4).  This action satisfies the numerosity,

commonality, typicality, adequacy, predominance, and superiority requirements of those

provisions.

42.     The proposed classes are defined as:

#### Nationwide Class

All persons or entities in the United States that purchased or leased
a Class Vehicle, as defined herein.

#### Tennessee Subclass

All Persons or entities in Tennessee that purchased or leased a
Class Vehicle, as defined herein.

43.     Excluded from the Nationwide Class and Tennessee Subclass (the "Classes") are:

(A) Volkswagen, any entity or division in which Volkswagen has a controlling interest, and their

legal representatives, officers, directors, assigns, and successors; (B) the Judge to whom this case

is assigned and the Judge's staff; (C) governmental entities; and (D) those persons who have

suffered personal injuries as a result of the facts alleged herein.  Plaintiff reserves the right to

amend the Class definitions if discovery and further investigation reveal that any Class should be

expanded, divided into additional subclasses, or modified in any other way.

**Numerosity and Ascertainability**

44.      Although the exact number of Class Members is uncertain, the size of the Classes can be estimated with reasonable precision, and the number is great enough that joinder is impracticable.  To date, approximately 482,000 vehicles identified as Class Vehicles have been sold in the United States.  The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.  Class Members are readily identifiable from information and records in Volkswagen's possession, custody, or control, and/or from state vehicle registration records.

**Typicality**

45.      The claims of the representative Plaintiff is typical of the claims of the Classes in that the representative Plaintiff, like all Class Members, purchased or leased a Class Vehicle designed, manufactured, and distributed by Volkswagen.  The representative Plaintiff, like all Class Members, has been damaged by Volkswagen's misconduct in that they have incurred losses relating to the Class Vehicles.  Furthermore, the factual bases of Volkswagen's misconduct are common to all Class Members and represent a common thread of misconduct resulting in injury to all Class Members.

**Adequate Representation**

46.      Plaintiff is a member of the Classes and will fairly and adequately represent and protect the interests of the Class.  Plaintiff has retained counsel with substantial experience in prosecuting consumer class actions, including actions involving defective products generally, and defective automobile parts specifically.

1274471.1

47.    Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so.  Neither Plaintiff nor his counsel has interests adverse to those of the Class.

### Predominance of Common Issues

48.    There are numerous questions of law and fact common to Plaintiff and Class Members that predominate over any question affecting only individual Class Members.  The answers to these common questions will advance resolution of the litigation as to all Class Members.  These common legal and factual issues include:

a.    whether the Class Vehicles contained a defeat device and emitted unlawful levels of pollutants under normal operation;

b.    whether Volkswagen knew or should have known about the defeat device and emission levels in the Class Vehicles;

c.    whether the true nature of the Class Vehicles' performance, emissions levels, fuel economy, and the inclusion of the defeat device constitute material facts that reasonable consumers would have considered in deciding whether to purchase a Class Vehicle;

d.    whether Volkswagen made material misrepresentations regarding the Class Vehicles.

e.    whether Volkswagen had a duty to disclose the true nature of the Class Vehicles to Plaintiff and Class Members;

f.    whether Volkswagen omitted and failed to disclose material facts about the Class Vehicles;

1274471.1

g.     whether Volkswagen's concealment of the true nature of the Class

Vehicles would have induced a reasonable consumer to act to their detriment by purchasing

and/or leasing the Class Vehicles;

h.     whether Plaintiff and Class Members are entitled to a declaratory

judgment; and,

i.     whether Plaintiff and Class Members are entitled to equitable relief,

including, but not limited to, a preliminary and/or permanent injunction.

**<u>Superiority</u>**

49.     Plaintiff and Class Members have all suffered and will continue to suffer harm

and damages as a result of Volkswagen's unlawful and wrongful conduct.  A class action is

superior to other available methods for the fair and efficient adjudication of this controversy.

50.     Absent a class action, most Class Members would likely find the cost of litigating

their claims prohibitively high and would therefore have no effective remedy at law.  Because of

the relatively small size of the individual Class Members' claims, it is likely that only a few

Class Members could afford to seek legal redress for Volkswagen's misconduct.  Absent a class

action, Class Members will continue to incur damages, and Volkswagen's misconduct will

continue without remedy.

51.     Class treatment of common questions of law and fact would also be a superior

method to multiple individual actions or piecemeal litigation in that class treatment will conserve

the resources of the courts and the litigants, and will promote consistency and efficiency of

adjudication.

52.     Volkswagen has acted in a uniform manner with respect to the Plaintiff and Class

Members.

1274471.1

53. Classwide declaratory, equitable, and injunctive relief is appropriate under Rule 23(b)(1) and/or (b)(2) because Volkswagen has acted on grounds that apply generally to the class, and inconsistent adjudications with respect to the Volkswagen's liability would establish incompatible standards and substantially impair or impede the ability of Class Members to protect their interests. Classwide relief assures fair, consistent, and equitable treatment and protection of all Class Members, and uniformity and consistency in Volkswagen's discharge of their duties to perform corrective action regarding the Class Vehicles.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Common Law Fraud**
**(Brought on Behalf of the Nationwide Class)**

54. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

55. Plaintiff brings this claim on behalf of the Nationwide Class.

56. Volkswagen engaged in both speaking and silent fraud, and in fraudulent and deceptive conduct, throughout the Class Period. As described above, Volkswagen's conduct defrauded Plaintiff and Class Members, intending and leading them to believe, through affirmative misrepresentations, omissions, suppression and concealments of material fact, that the Class Vehicles, marketed by Volkswagen as "clean diesel" vehicles, possessed important characteristics that they in fact did not possess—namely the combination of low emissions, high performance, and fuel economy—and inducing their purchases.

57. Volkswagen's intentional and material misrepresentations included, among other things, its advertising, marketing materials and messages, and other standardized statements claiming the Class Vehicles (a) were clean and eco-friendly and (b) combined low emissions with high performance and strong fuel economy.

1274471.1

58. The foregoing misrepresentations were uniform across all Class Members. The same advertisements were shown to all members of the public generally and the same marketing materials were distributed to customers and potential customers, and all of the materials contained the same standardized statements relating to the Class Vehicles' environmental friendliness, performance and fuel economy.

59. These representations directly contradicted the true nature and hidden design of the Class Vehicles and their actual emissions when operating under normal circumstances. Volkswagen knew the representations were false when it made them, and intended to defraud purchasers thereby.

60. Volkswagen also had a duty to disclose, rather than conceal and suppress, the full scope and extent of the emissions deception because:

a. Volkswagen had exclusive knowledge of the actual emissions in the Class Vehicles and concealment thereof;

b. The details regarding the actual emissions in the Class Vehicles and concealment thereof were known and/or accessible only to Volkswagen;

c. Volkswagen knew Plaintiff and Class Members did not know and could not reasonably discover the actual emissions in the Class Vehicles and concealment thereof; and

d. Volkswagen made general representations about the qualities of the Class Vehicles, including statements about their performance, fuel economy, and emissions, which were misleading, deceptive and incomplete without the disclosure of the fact that Volkswagen secretly designed and installed defeat device software on the Class Vehicles that was intended to conceal the vehicles' exceedingly high and illegal emission levels from governments, consumers, and the public.

61. Volkswagen's concealment was likewise uniform across all Class Members in that Volkswagen concealed from everyone other than itself, including potential customers and regulators, the true facts relating to the emission levels of the Class Vehicles.

62. Volkswagen's misrepresentations and omissions were material in that they would affect a reasonable consumer's decision to purchase or lease a Class Vehicle. Consumers paid a premium for the clean diesel Class Vehicles precisely because they supposedly offered low emissions and fuel economy without sacrificing performance. Volkswagen's conduct, misrepresentations, omissions, concealment, and suppression, undermined the core value proposition that induced consumers to purchase or lease the Class Vehicles, and directly affect both the quality and worth of the vehicles.

63. Volkswagen's intentionally deceptive conduct—its silent fraud and fraud by concealment—likewise induced the Class Vehicles' purchase by Plaintiff and Class Members, and the resulting harm and damage to them.

64. Plaintiff relied upon Volkswagen's misrepresentations and concealment of the true facts. Class Members are presumed to have relied upon Volkswagen's misrepresentations and concealment of the true facts because those facts are material to a reasonable consumer's purchase the Class Vehicles.

65. As a result of Volkswagen's inducements, Plaintiff and Class Members have sustained significant damage, including, but not limited to, lost vehicle value and diminished vehicle quality and utility. If Plaintiff and Class members had known about the defeat device and the unlawful emissions at the time of acquisition, they would not have acquired the Class Vehicles. Indeed, the Class Vehicles could not have been marketed or sold to any reasonable

1274471.1

consumer had existence of the defeat device been disclosed. Volkswagen is therefore liable to Plaintiff and Class Members in an amount to be proven at trial.

66.     Volkswagen intentionally designed and engineered its "clean diesel" vehicles to deceive and cheat regulators and its customers. Volkswagen touted the performance and environmental virtues of these vehicles, while concealing and suppressing the truth about them, for the purpose of inducing Plaintiff and the Class to buy them. Volkswagen's fraud caused both the purchase and the harm. In order to undo this harm, Volkswagen must repair or remediate the vehicles so that they deliver everything it promised when it sold them, or undertake to buy them back from Class Members in terms that are just and equitable under principles of rescission, restitution, and benefit of the bargain.

67.     Volkswagen's conduct was systematic, repetitious, knowing, intentional, and malicious, and demonstrated a lack of care and reckless disregard for the rights and interests of Plaintiff, the public, and the environment. Volkswagen's conduct thus warrants an assessment of punitive damages, consistent with the actual harm it has caused, the reprehensibility of its conduct, and the need to punish and deter such conduct.

<u>**SECOND CLAIM FOR RELIEF**</u>
**Unjust Enrichment**
**(Brought on Behalf of the Nationwide Class)**

68.     Plaintiff brings this claim on behalf of the Nationwide Class.

69.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

70.     Volkswagen has been unjustly enriched in that it intentionally sold the Class Vehicles with defeat devices which were intended to mask the fact that the Class Vehicles did not comply with applicable automobile exhaust regulations and could not deliver the combination of low emissions, high performance, and fuel economy promised to consumers.

1274471.1

71.     Plaintiff and Class Members conferred a benefit on Volkswagen by purchasing, and paying a premium for, the Class Vehicles.

72.     When purchasing their vehicles, Plaintiff and Class Members reasonably believed that the Class Vehicles complied with applicable environmental regulations and, if properly tested in accordance with EPA mileage standards, would achieve the mileage stated on the window sticker of the vehicles.  They also believed that the Class Vehicles would perform as advertised and warranted.

73.     Plaintiff and Class Members got less than what they paid for in that the Class Vehicles did not comply with applicable environmental regulations, nor was the EPA mileage stated on the sticker usable for comparison purposes for other vehicles. Moreover, the Class Vehicles did not deliver the promised combination of low emissions, high performance, and fuel economy that Plaintiff and Class Members.

74.     Volkswagen knows of and appreciates the benefit conferred by Plaintiff and Class Members and has retained that benefit notwithstanding its knowledge that the benefit is unjust.

75.     The foregoing did not occur by happenstance or conditions out of Volkswagen's control.  In fact, the Class Vehicles were deliberately designed to comply with environmental regulations only when being tested and were known and intended by Volkswagen to not comply with applicable regulations under ordinary driving conditions.

76.     Volkswagen should therefore be required to disgorge the unjust enrichment.

### THIRD CLAIM FOR RELIEF
**Breach of Express Warranty**
**(Brought on Behalf of the Nationwide Class)**

77.     Plaintiff brings this claim on behalf of the Nationwide Class.

78.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

79.     By advertising the "green" and "clean" qualities of its diesel engines, Volkswagen expressly warranted to Plaintiff and Class Members that the vehicles at least complied with all applicable laws and regulations relating to exhaust emissions, as it would be impossible for an automobile to be "green" if it emitted more pollutants than were allowed by applicable environmental laws and regulations.

80.     Moreover, by advertising the low emissions in combination with statements regarding the performance, torque, and fuel efficiency, Volkswagen warranted to purchasers of the Class Vehicles that the vehicles would exhibit this combination of characteristics.  Such statements became the basis of the bargain for Plaintiff and other Class Members because such statements are among the facts a reasonable consumer would consider material in the purchase of a vehicle.

81.     In fact, in ordinary driving conditions, the Class Vehicles did not comply with applicable environmental regulations, and instead emitted between 10 and 40 times the amount of pollutants allowed during normal operation.  As such, it was unlawful for Volkswagen to sell the vehicles to the public.

82.     In addition, Volkswagen stated that the vehicles achieved certain fuel economy when tested in accordance with applicable EPA regulations.  Those statements created an express warranty that the vehicle achieved the stated fuel efficiency, allowing consumers to make apples-to-apples comparisons with other vehicles.

83.     Testing under EPA regulations presupposes that the vehicles comply with all laws and regulations applicable to automobiles, including environmental regulations.

84.     In fact, had the Class Vehicles been tested in accordance with EPA fuel efficiency standards while also complying with pollution regulations, they would have achieved significantly lower fuel efficiency than was stated on the EPA mileage sticker on the vehicle.

85.     In addition, the Class Vehicles are not adequately labeled because they misstate that the Class Vehicles comply with EPA regulations, and the stated gas mileage for comparison purposes was not achieved by testing in accordance with EPA testing procedures.

86.     As a result of the foregoing breaches of express warranty, Plaintiff and other Class Members have been damaged in that they purchased vehicles that were unlawfully sold, did not comply with government regulations, did not perform as promised, and were less valuable than what they paid for.

## FOURTH CLAIM FOR RELIEF
### Violation of Magnuson-Moss Act, 15 U.S.C. §§ 2301, *et seq.* – Implied Warranty
### (Brought on Behalf of the Nationwide Class)

87.     Plaintiff brings this claim on behalf of the Nationwide Class.

88.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

89.     The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

90.     Plaintiff and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3), because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its express and implied warranties.

91.     Volkswagen is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

92. Section 2310(d)(1) of Chapter 15 of the United States Code provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

93. Volkswagen provided Plaintiff and the other Class Members with an implied warranty of merchantability in connection with the purchase or lease of their vehicles that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7). As a part of the implied warranty of merchantability, Volkswagen warranted that the Class Vehicles would pass without objection in the trade as designed, manufactured, and marketed, and were adequately labeled.

94. Volkswagen breached these implied warranties, as described in more detail above, and are therefore liable to Plaintiff and the Class pursuant to 15 U.S.C. § 2310(d)(1).

95. Any efforts to limit the implied warranties in a manner that would exclude coverage of the Class Vehicles is unconscionable, and any such effort to disclaim, or otherwise limit, liability for the Class Vehicles is null and void.

96. Plaintiff and the other Class Members have had sufficient direct dealings with either Volkswagen or its agents (dealerships) to establish privity of contract.

97. Nonetheless, privity is not required here because Plaintiff and other Class Members are intended third-party beneficiaries of contracts between Volkswagen and its dealers, and specifically, of the implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit consumers.

98.     Pursuant to 15 U.S.C. § 2310(e), Plaintiff is entitled to bring this class action and is not required to give Volkswagen notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiff pursuant to Rule 23 of the Federal Rules of Civil Procedure.

99.     Plaintiff's individual claims place into controversy an amount equal to or exceeding $25. The amount in controversy of this entire action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit. Plaintiff, individually and on behalf of the other Class Members, seeks all damages permitted by law, including diminution in value of their vehicles, in an amount to be proven at trial. In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiff and the other Class Members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiff and the other Class Members in connection with the commencement and prosecution of this action.

100.     Further, Plaintiff and the Class are also entitled to equitable relief under 15 U.S.C. § 2310(d)(1).

**FIFTH CLAIM FOR RELIEF**
**Breach of Implied Warranty**
**(Brought on Behalf of Tennessee Subclass)**

101.     Plaintiff brings this claim on behalf of the Tennessee Class.

102.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

103.     Volkswagen provided Plaintiff and the other Class Members with an implied warranty in connection with the purchase or lease of their vehicles. As a part of the implied

warranty, Volkswagen warranted that the Class Vehicles would pass without objection in the trade as designed, manufactured, and marketed, and were adequately labeled.

104.    Volkswagen breached these implied warranties, as described in more detail above, by failing to deliver vehicles that performed as warranted and by installing a defeat device designed to bypass government emissions standards.

105.    Any efforts to limit the implied warranties in a manner that would exclude coverage of the Class Vehicles is unconscionable, and any such effort to disclaim, or otherwise limit, liability for the Class Vehicles is null and void.

106.    Plaintiff and the other Class Members have had sufficient direct dealings with either Volkswagen or its agents (dealerships) to establish privity of contract.

107.    Nonetheless, privity is not required here because Plaintiff and other Class Members are intended third-party beneficiaries of contracts between Volkswagen and its dealers, and specifically, of the implied warranties.  The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit consumers.

108.    As a direct and proximate result of Volkswagen's breach of its implied warranties, Plaintiff and Class Members suffered significant injury including, but not limited to, diminution in value of their vehicles.

## **PRAYER FOR RELIEF**

Plaintiff, individually and on behalf of all others similarly situated, requests the Court to enter judgment against Volkswagen, as follows:

A.     an order certifying the proposed Nationwide Class, designating Plaintiff as the named representative of the Nationwide Class, and designating the undersigned as Class Counsel;

B.     an order certifying the proposed Tennessee Subclass, designating Plaintiff as the named representative of the Tennessee Subclass, and designating the undersigned as Class Counsel;

C.     a declaration that the Volkswagen is financially responsible for notifying all Class Members about the true nature of the Class Vehicles;

D.     an order enjoining Volkswagen to desist from further deceptive distribution, sales, and lease practices with respect to the Class Vehicles, and directing Volkswagen to permanently, expeditiously, and completely repair the Class Vehicles;

E.     an order compelling Volkswagen to buy back the Class Vehicles on fair and equitable terms;

F.     an award to Plaintiff and Class Members of compensatory, exemplary, punitive, and statutory penalties and damages, including interest, in an amount to be proven at trial;

G.     an award to Plaintiff and Class Members for the return of the purchase prices of the Class Vehicles, with interest from the time it was paid, for the reimbursement of the reasonable expenses occasioned by the sale, for damages and for reasonable attorney fees;

H.     a declaration that Volkswagen must disgorge, for the benefit of Plaintiff and Class Members, all or part of the ill-gotten profits received from the sale or lease of the Class Vehicles, and make full restitution to Plaintiff and Class Members;

I.     an award of attorneys' fees and costs, as allowed by law;

J.     an award of pre-judgment and post-judgment interest, as provided by law;

K.    leave to amend this Complaint to conform to the evidence produced at trial; and

L.    such other relief as may be appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any

and all issues in this action so triable of right.


Dated:  September 25, 2015                    Respectfully submitted,

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

By:      /s/ Mark P. Chalos
         Mark P. Chalos

Mark P. Chalos (TN BPR #19328)
*mchalos@lchb.com*
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
One Nashville Place
150 Fourth Avenue North, Suite 1650
Nashville, TN  37219-2423
Telephone:  (615) 313-9000
Facsimile:  (615) 313-9965

Elizabeth J. Cabraser (*pro hac vice* to be filed)
*ecabraser@lchb.com*
Todd A. Walburg (*pro hac vice* to be filed)
*twalburg@lchb.com*
Kevin R. Budner (*pro hac vice* to be filed)
*kbudner@lchb.co*
Phong-Chau Nguyen (*pro hac vice* to be filed)
*pgnguyen@lchb.com*
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

Steven E. Fineman (*pro hac vice* to be filed)
*sfineman@lchb.com*
David S. Stellings (*pro hac vice* to be filed)
*dstellings@lchb.com*
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

BART DURHAM INJURY LAW
404 James Robertson Parkway, Suite 1712
Nashville, TN 37219
Telephone: (615) 338-6177
Facsimile: (615) 254-6562

*Attorneys for Plaintiff Hess individually and behalf of all others similarly situated*

1274471.1